THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

David Schnese
W5625 Vans Road
Appleton, WI 54915,

    Plaintiff,

v.

County of Forest
100 S. Park Avenue
Crandon, WI 54520,

Sergeant Darrell B. Wilson, Jr., in his individual
capacity,
901 N. Hazeldell Avenue
Crandon, WI 54520

    Defendants.

Case No. 19-cv-1385
Jury Trial Demanded

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff David Schnese ("Schnese"), by his attorneys, Pines Bach LLP, as a complaint against Defendants County of Forest ("the County"), and Sergeant Darrell B. Wilson, Jr. ("Wilson"), alleges as follows:

**INTRODUCTION**

1. This action is a claim for compensatory and punitive damages and attorneys' costs and fees, brought pursuant to 42 U.S.C. §§ 1983 and 1988, for violations by Defendants, acting under the color of state law, of Schnese's right, under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable seizure.

## JURISDICTION & VENUE

2. This Court has original jurisdiction over the claims made in this complaint pursuant to 28 U.S.C. § 1331, because the cause of action arises under the United States Constitution and 42 U.S.C. § 1983. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to this claim occurred in the Eastern District of Wisconsin.

## PARTIES

3. Plaintiff David Schnese is an adult resident of the State of Wisconsin who resides at W5625 Vans Road, Appleton, Wisconsin 54915.

4. Defendant County of Forest is a county of the State of Wisconsin. Its central offices are located at 100 S. Park Avenue, Crandon, Wisconsin, 54520.

5. Defendant Darrell B. Wilson, Jr. is a sergeant with the Forest County Sheriff's Department and is being sued in his individual capacity. Wilson resides at 901 N. Hazeldell Avenue, Crandon, Wisconsin, 54520. At all times relevant to this Complaint, Wilson was acting under color of State of Wisconsin law within the scope of his employment with, and under the training and supervision of, the County. Wilson's work duties include investigating citizen disputes and potential crimes and enforcing the law on behalf of the County, including by making arrests pursuant to his investigations.

## FACTS

6. Schnese owns a lake home at 4341 East Lakeview St. (the "Schnese property") in the Town of Lincoln, Wisconsin.

7. The Schnese property is located in a quiet, rural area approximately two miles from the nearest municipality of Crandon, Wisconsin.

8. One of Schnese's next-door neighbors at this property is Arnold Wolf ("Wolf").

9. On the evening of October 20, 2017, the Forest County Sheriff's Department was called to Wolf's house in response to Wolf's complaint about an ongoing property line dispute between Wolf and Schnese. Wilson was dispatched to respond.

10. The dispute concerned several issues: Wolf's concerns about Schnese's pending, fully-permitted cottage construction project and his temporary storage of logs near the property line, Wolf's hanging of a chain upon several supporting posts and trees straddling the property line, and Schnese's having taken part of the chain down and leaving it on the ground.

11. Wilson was aware of the general nature of this dispute. He had been informed by another officer that Schnese was planning to send the County a survey map that he had ordered in order to help settle the dispute, but he had not yet seen Schnese's map.

12. Wilson interviewed Wolf inside his home in a friendly manner. During the course of the interview, Wolf disparaged Schnese and suggested that Schnese

needed "correction" and that nobody could make him respond to anything "short of him maybe getting arrested for something."

13. At the conclusion of the interview, Wilson told Wolf that "I'm gonna go talk to him, see what he has to say for himself, then I'll come talk to you again."

14. Wilson then left Wolf's residence and proceeded first to inspect the lot line and then to knock on Schnese's door and question Schnese.

15. From the outset, Wilson's tone and demeanor with Schnese were less friendly and more confrontational than in his interaction with Wolf, and they only grew more confrontational as the interaction proceeded.

16. Schnese was not armed and Wilson had no reason to believe that he was armed.

17. The only witnesses present were Schnese's daughter Brianna and wife Carol.

18. Upon Wilson's request, Schnese agreed to step outside to show Wilson where he believed the property line to be.

19. Wilson informed Schnese, in confrontational terms and tone, that he disagreed with Schnese's assessment of the location of the lot line.

20. Wilson admitted to Schnese that neither property owner could hang a chain around a tree straddling the line without the other's permission, as Wolf had done.

21. Even so, Wilson proceeded to badger Schnese. Instead of simply explaining to Schnese what he believed Schnese should have done differently in

response to Wolf's action, Wilson repeatedly demanded that Schnese tell *him* what the "proper response" would have been to the situation.

22. When Schnese did not give him the response that he demanded, Wilson repeated the question again four times.

23. Schnese stated, "I'm not here to argue with you either, sir. But you're here to argue with me."

24. Wilson continued to badger him. In response, a frustrated but not belligerent Schnese simply maintained his stance on Wolf's action, trying to clarify that nothing gave Wolf "permission to put that chain on that tree. I'm done fucking around."

25. Wilson lost his temper and, without warning or explanation, he suddenly attacked Schnese. Wilson simultaneously grabbed at Schnese while yelling at him to turn around and telling him that he was under arrest.

26. Schnese, bewildered, turned around in compliance with Wilson's demand and asked what he was under arrest for.

27. Brianna Schnese began to record the encounter on cell phone video and was able to capture nearly the entire encounter.

28. Wilson tackled Schnese, yelling at him to get on the ground or else he was "going to get tased."

29. Schnese fell to the ground under Wilson's weight, but attempted to remain on his knees.

30. As Wilson tried to wrestle Schnese onto his face with his hands behind his back, Schnese repeatedly protested that this was "a lot line dispute" and that he was not resisting Wilson's arrest.

31. Schnese did not fight back against Wilson, but only tried to hold his body so as to protect himself from Wilson assaulting him further.

32. Wilson proceeded to deploy both the projectile probes and the drive-stun function of his conducted electrical weapon ("CEW") against Schnese, pepper spray him, punch him at least three times in the face, and repeatedly strike him elsewhere on his body even after Schnese was already on the ground and under Wilson's control.

33. Wilson called for backup on his radio, then screamed at Schnese to "get on the ground" (even though he had already pinned Schnese to the ground) and to "put your fucking hands behind your back."

34. With Schnese lying on his side and Wilson kneeling on the side of his head, Wilson again yelled at Schnese to "get on your stomach" even though Wilson's forced position on top of him made that a physical impossibility.

35. After the brutal submission was complete, an agonized Schnese asked Wilson, "Why are you assaulting me?" Wilson answered, "Because you're not cooperating."

36. Schnese then asked Wilson why he had been placed under arrest. Wilson answered, "Because I told you you were." After Schnese was able to ask Wilson again why he had been arrested, Wilson answered "You put your hand in my face and began to argue with me."

37. Wilson's body camera video shows Wilson's statement to be false, as Schnese had only pointed his finger straight in the air.

38. Schnese asked Wilson if they could just discuss the situation. Wilson replied, "Go into handcuffs and I'll talk to you." However, even after completely subduing Schnese and placing him into handcuffs, Wilson refused to discuss the situation with Schnese or even to let Schnese be moved to a more comfortable position, only allowing Carol Schnese to pour water into his eyes while he lied on the ground.

39. Brianna and Carol Schnese reacted in shock and distress to Wilson's escalations of his assault on Schnese. They pleaded with Wilson to stop and commented that Schnese had not been disorderly or put his hands in Wilson's face and that Wilson's actions were excessive and unreasonable.

40. Although Brianna and Carol Schnese intently monitored the assault, they did not interfere. Wilson ordered Carol Schnese to back up three times, and each time she immediately complied.

41. After other law enforcement officers arrived on the scene and one of them raised Schnese from the ground, Brianna Schnese turned off her cell phone recording.

42. Schnese was ultimately transported by ambulance to the hospital in Rhinelander, where he was treated for injuries that included fractures to three vertebrae in his back.

43. Schnese was then held in the Forest County jail for two days and later charged with four counts stemming from the incident. All four counts were subsequently dismissed on the prosecutor's motion.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT DARRELL WILSON FOR FALSE ARREST IN VIOLATION OF SCHNESE'S 4th AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION

44. Schnese re-alleges the statements in paragraphs 2 through 43 above as if fully stated herein.

45. Wilson arrested Schnese for disorderly conduct related to Schnese's pointing of his finger and Schnese's statements to Wilson.

46. At the time of the arrest, Schnese was not engaging and had not engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct.

47. At the time of the arrest, Schnese's conduct was not, under the circumstances, likely to cause or provoke a disturbance.

48. At the time of the arrest, the facts and circumstances within Wilson's knowledge would not have led a reasonably prudent person in Wilson's position to believe that Schnese had committed, was committing, or was about to commit the crime of disorderly conduct.

49. At the time of the arrest, Wilson lacked probable cause to arrest Schnese for disorderly conduct.

50. Wilson's false arrest of Schnese violated Schnese's right under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

51. As a direct and proximate result of Wilson's false arrest of Schnese, Schnese suffered significant injuries.

52. Wilson's conduct displayed a reckless or callous indifference to Schnese's constitutionally protected right to be free from unreasonable seizure that should be sanctioned by punitive damages.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT DARRELL WILSON FOR EXCESSIVE USE OF FORCE IN VIOLATION OF SCHNESE'S 4th AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION**

53. Schnese re-alleges the statements in paragraphs 2 through 52 above as if fully stated herein.

54. Wilson's actions in arresting Schnese, including but not limited to deploying his CEW's projectile probes and drive-stun function against, pepper spraying, punching, contorting, and kneeling on the head of Schnese, were prolonged and brutal and caused Schnese unnecessary injury, including multiple fractures in his vertebrae, that led to his hospitalization.

55. The alleged crime for which Wilson arrested Schnese—disorderly conduct related to Schnese's pointing of his finger and Schnese's statements to Wilson—was a Class B misdemeanor, and thus of low severity.

56. At all times relevant to this complaint, Schnese did not pose an immediate threat to the safety of Wilson or others.

57. At all times relevant to this complaint, Schnese did not actively resist arrest.

58. At all times relevant to this complaint, Schnese did not attempt to evade arrest by flight.

59. Wilson's use of force against Schnese was not objectively reasonable in light of the facts and circumstances confronting Wilson and, therefore, it was excessive.

60. Wilson's excessive use of force against Schnese violated Schnese's right under the 4th and 14th Amendments of the U.S. Constitution to be free from unreasonable seizure.

61. As a direct and proximate result of Wilson's excessive use of force against Schnese, Schnese suffered significant injuries.

62. Wilson's conduct displayed a reckless or callous indifference to Schnese's constitutionally protected right to be free from unreasonable seizure that should be sanctioned by punitive damages.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT FOREST COUNTY FOR VIOLATING SCHNESE'S 4th AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION**

63. Schnese re-alleges the statements in paragraphs 2 through 62 above as if fully stated herein.

64. The County had a duty to adequately train and/or otherwise supervise its officers regarding the questioning of citizens during an investigation, the control of one's anger in an interaction with citizens, the circumstances under which a disorderly conduct arrest pursuant to a public interaction with a citizen is appropriate, and the proper application of force pursuant to an arrest under the circumstances here.

65. The County failed in its performance of that duty in Wilson's case.

66. The need for the County to have provided more or different training to Wilson was plainly obvious in light of Wilson's law enforcement duties and through the circumstances of Wilson's false arrest of, and excessive use of force against, Schnese.

67. The violations of Schnese's Constitutional right to be free from unreasonable seizure were highly predictable consequences of the County's failures in the training and/or supervision of Wilson.

68. The County made deliberate policy choices by failing to provide the appropriate training and/or supervision of Wilson, thus constituting deliberate indifference to the Constitutional rights of individuals with whom Wilson came into contact.

69. The County's failure to properly train and supervise Wilson resulted in his false arrest and excessive use of force against Schnese, which violated Schnese's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizure.

70. The County's failure to properly train and supervise Wilson caused Schnese's injuries and were the moving force behind the unconstitutional deprivations of Schnese's right to be free from unreasonable seizure.

## RELIEF REQUESTED

WHEREFORE, Plaintiff David Schnese requests judgment as follows:

A. On the First Cause of Action against Defendant Darrell Wilson, individually, as follows:

1. Compensatory and punitive damages;

2. Pursuant to 42 U.S.C. § 1988, reasonable attorneys' fees, expenses, and statutory costs and fees; and

3. Such other relief as the Court may deem just and proper.

B. On the Second Cause of Action against Defendant Darrell Wilson, individually, as follows:

1. Compensatory and punitive damages;

2. Pursuant to 42 U.S.C. § 1988, reasonable attorneys' fees, expenses, and statutory costs and fees; and

3. Such other relief as the Court may deem just and proper.

C. On the Third Cause of Action against the Defendant County of Forest, as follows:

1. Compensatory damages;

2. Pursuant to 42 U.S.C. § 1988, reasonable attorneys' fees, expenses, and statutory costs and fees; and

3. Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff David Schnese demands a trial by jury.

Respectfully submitted this 23rd day of September, 2019.

                                            PINES BACH LLP

                                            */s/ Aaron G. Dumas*
                                            Jordan C. Loeb, SBN 1023088
                                            Aaron G. Dumas, SBN 1087951

                                            *Attorneys for David Schnese, Plaintiff*

<u>Mailing Address:</u>
122 West Washington Avenue
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
jloeb@pinesbach.com
adumas@pinesbach.com